UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**TWIN RIVERS ENGINEERING CORPORATION,**

        Plaintiff,

v.                                          Case No: 6:12-cv-1794-Orl-36TBS

**FIELDPIECE INSTRUMENTS, INC.,**

        Defendant.

## ORDER

This cause comes before the Court on two motions filed by Plaintiff Twin Rivers Engineering Corporation ("TRE"): (1) TRE's Motion for Summary Judgment on Count III of Its Second Amended Complaint ("Motion for Partial Summary Judgment") (Doc. 50); and (2) TRE's Motion to Dismiss Defendant Fieldpiece Instruments, Inc.'s ("Fieldpiece") Amended Counterclaim ("Motion to Dismiss Counterclaims") (Doc. 55). Fieldpiece filed responses in opposition to both the Motion for Partial Summary Judgment and the Motion to Dismiss Counterclaims (Docs. 56, 57). Upon due consideration of the parties' submissions, including affidavits, stipulation of facts, exhibits, and memoranda of counsel, and for the reasons that follow, TRE's Motion for Partial Summary Judgment will be granted and TRE's Motion to Dismiss Counterclaims will be granted in part and denied in part.

**I.    BACKGROUND AND RELEVANT FACTS**

    **A.    The Parties**

TRE, a Florida corporation with its principal place of business in Brevard County, Florida, is a design and development company specializing in infrared-based gas detection products. Doc.

38, ¶¶ 1, 8. TRE owns United States Patent No. 7,022,993 for an infrared leak detector (the "'993 Patent"). Doc. 59, Stipulation of Agreed Material Facts ("SAF") ¶¶ 1–2. TRE also owned United States Patent No. 6,791,088 for an infrared leak detector (the "'088 Patent") until it was invalidated upon reexamination by the U.S Patent and Trademark Office ("PTO") on June 29, 2010. *Id.* ¶¶ 3–4, 7.

Fieldpiece is a California corporation with its principal place of business in Anaheim, California. Doc. 38 ¶ 3. Fieldpiece develops, designs, markets, and sells custom products worldwide to be used by technicians in the heating, ventilation, air conditioning, and refrigeration ("HVAC/R") industry. Doc. 16, Ex., Affidavit of Rey Harju ("Harju Aff.") ¶ 4.

### B.      The Business Agreement

#### 1.      *Sales by Fieldpiece in the HVAC/R Market*

On April 16, 2006, TRE and Fieldpiece entered into a written agreement (the "Business Agreement") whereby TRE granted Fieldpiece an exclusive license to sell products covered by the '993 Patent and the '088 Patent (the "Patented Technology") in the HVAC/R market (the "HVAC/R Market License"). SAF ¶ 11; Doc. 59-1, Business Agreement ("Bus. Agmt.") § 2(g). The Business Agreement further provides:

> The licenses according to this agreement shall terminate upon expiration of the patent for any reason, including failure to pay maintenance fees, or upon any final judgment of invalidity by a court of competent jurisdiction in the United States and further including exhaustion of all appeals after a final rejection in a reexamination process in the United States Patent & Trademark Office.

Bus. Agmt. § 2(g)(ii). The Business Agreement also states:

> In lieu of a royalty, TRE will exclusively supply to Fieldpiece or Fieldpiece's supplier in quantities ordered by Fieldpiece or its supplier to meet its market requirements a custom integrated circuit ["Integrated Circuit"] suitable for use in a hand held leak detector at a reasonable mutually agreeable price, based on commercial considerations in conformance with the California Uniform Commercial Code.

*Id.* § 2(h). The Business Agreement contains a provision stating that it "shall be governed in all respects by the laws of the State of California." *Id.* § 2(o).

After the execution of the Business Agreement, and pursuant to its terms, Fieldpiece would place an order with its supplier, CHY Firemate Co., Ltd. ("CHY"), for a fully-manufactured HVAC/R infrared leak detector which included TRE's Patented Technology. Doc. 21, Ex. A., Affidavit of William Williams ("Williams Aff.") ¶ 19. CHY, in turn, would place an order with TRE for its Patented Technology. *Id.* TRE would then send its Patented Technology to CHY, which would manufacture the HVAC/R infrared leak detector and send it to Fieldpiece. *Id.* ¶¶ 14, 19. CHY would pay TRE for the Patented Technology. *Id.* ¶ 19.

2.  *Sales by TRE in the Automotive Market*

In addition to the provisions regarding sales by Fieldpiece in the HVAC/R market, the Business Agreement contains language addressing the possibility of TRE selling infrared leak detectors in the automotive market. Bus. Agmt. §§ 1(d), 2(d)–(f), 2(i)–(j). Under the Business Agreement, if TRE made a decision to enter this market, TRE would sell the infrared leak detectors exclusively through Fieldpiece or, alternatively, Fieldpiece would serve as TRE's supplier and TRE would sell the detectors on its own. *Id.* § 2(d). Fieldpiece agreed to "support TRE's efforts in the automotive market" by performing certain other agreed-upon commercial functions. *Id.* §§ 2(i)–(j).[1]

---

[1] At a hearing on Fieldpiece's Motion for Preliminary Injunction, counsel for TRE stated that the parties chose not to pursue the automotive relationship outlined in the Business Agreement and that, as a result, those provisions are not at issue in this case. *See* Doc. 32. However, in its Second Amended Complaint, TRE added a claim for Breach of Business Agreement Regarding Automotive Mold (Count I), asserting that the provisions regarding the automotive relationship did indeed provide the basis for the parties' subsequent Automotive Mold Agreement, discussed *infra* in Part I.D, and that Fieldpiece breached the Business Agreement by failing to provide the automotive molds. *See* Doc. 38 ¶¶ 21–22, 32–37.

### C. Invalidation of the '088 Patent

On December 7, 2006, TRE instituted a patent infringement lawsuit against a third party, Inficon, Inc. ("Inficon"). SAF ¶ 5. During the litigation, Inficon challenged the validity of TRE's '088 and '993 Patents and filed for reexamination of said Patents with the PTO. *Id.* ¶ 6. Upon reexamination, the PTO declared the '088 Patent invalid on June 29, 2010. *Id.* ¶ 7. However, prior to the '088 Patent being declared invalid, TRE voluntarily dismissed its suit. Harju Aff. ¶ 22.

### D. The Automotive Mold Agreement

In 2006—the same year as the execution of the Business Agreement—the parties entered into a separate, oral agreement (the "Automotive Mold Agreement") whereby Fieldpiece agreed to allow TRE to use a mold, designed and paid for by Fieldpiece, that would house TRE's infrared leak detectors sold in the automotive market (the "Automotive Mold"). *Id.* ¶ 8. Pursuant to the Automotive Mold Agreement, Fieldpiece allowed TRE to use the Automotive Molds continuously for over six years. Williams Aff. ¶ 21.

### E. Events Leading to the Current Dispute

Fieldpiece asserts that, at some point in 2012, it became aware that another company was selling leak detectors utilizing TRE's Patented Technology in the HVAC/R market, in violation of the provisions of the Business Agreement granting Fieldpiece the exclusive right to sell the Patented Technology in this market. Harju Aff. ¶ 11. TRE, however, claims that this was the result of a unilateral action by CHY to fill orders to companies other than Fieldpiece. Williams Aff. ¶¶ 24–28. Specifically, TRE avers that, through November 28, 2012—the date of its termination of the Business Agreement—it never allowed anyone other than Fieldpiece to sell its Patented Technology in the HVAC/R market. *Id.* ¶ 24. TRE further asserts that it had previously

informed CHY, orally and in writing, that CHY was prohibited from filling orders for TRE's Patented Technology placed by anyone other than Fieldpiece, including specifically SPX Service Solutions' European Division ("SPX") and SPX's holding company ("APO"). *Id.* ¶ 25.

After receiving notification from Fieldpiece regarding the unauthorized sales, TRE discovered that SPX, via APO, had placed an order with CHY for TRE's Patented Technology. *Id.* ¶¶ 26–27. TRE asserts that CHY, without the authorization or knowledge of TRE, filled SPX's order, and that SPX then sold the Patented Technology in the European market. *Id.* ¶¶ 27–28. TRE claims that it immediately informed CHY that it was not allowed to fill any orders for TRE's Patented Technology placed by SPX or APO. *Id.* ¶¶ 29–30. TRE further claims that it notified Fieldpiece, in writing and by telephone, of the situation, and that the situation had been resolved. *Id.* ¶ 30.

Fieldpiece, on the other hand, claims that TRE refused to take action to prevent the unauthorized sales from continuing. Harju Aff. ¶ 12. Fieldpiece states that TRE has a longstanding relationship with both CHY and SPX, and has the ability to control the quantity of Integrated Circuits that CHY uses to manufacture infrared leak detectors. Doc. 31-1, Supplemental Affidavit of Rey Harju, ¶¶ 19–20. On this basis, Fieldpiece notified TRE on October 11, 2012 that TRE was no longer authorized to order products using the Automotive Mold. SAF ¶ 13; Harju Aff. ¶ 13.

On November 27, 2012, counsel for TRE sent Fieldpiece a letter stating that "[t]o the extent the Business Agreement . . . is valid," TRE was terminating the Business Agreement, effective November 28, 2012. SAF ¶ 9; Doc. 38-1, Ex. 2.

    F.    **The Instant Action**

On November 27, 2012, TRE commenced this action by filing a Complaint in this Court. *See* Doc. 1. TRE's Second Amended Complaint asserts three claims: (1) Count I – Breach of

Business Agreement Regarding Automotive Mold; (2) Count II – Breach of Oral Agreement Regarding Automotive Mold; and (3) Count III – Declaratory Judgment. *See* Doc. 38. TRE asserts that, by terminating TRE's access to the Automotive Mold, Fieldpiece breached both the Business Agreement and the Automotive Mold Agreement. *See id.* ¶¶ 32–49. TRE claims that it was damaged by the alleged breaches because it has outstanding unfilled orders for 6,100 automotive infrared leak detectors from agents of Chrysler Corporation and General Motors. *Id.* ¶¶ 27–29. TRE also seeks a declaratory judgment stating that the Business Agreement has been terminated. *Id.* ¶¶ 50–61.

On January 21, 2013, Fieldpiece filed a Motion for Preliminary Injunction, seeking a Court Order requiring the parties to continue to perform pursuant to the terms of the Business Agreement until the resolution of this action. *See* Doc. 16. After oral argument, *see* Doc. 32, the Court entered an Order denying Fieldpiece's Motion for Preliminary Injunction. *See* Doc. 44. The Court found that Fieldpiece failed to demonstrate a substantial likelihood that, on the merits, it would defeat TRE's claim that the Business Agreement had been terminated. *Id.* at 11. In reaching its decision, the Court first observed that, under California law, where a contract has neither an express nor an implied term of duration, the contract will generally be construed as terminable at will. *Id.* at 9 (citing *Zee Med. Distrib. Ass'n, Inc. v. Zee Med., Inc.*, 94 Cal. Rptr. 2d 829, 835 (Cal. Ct. App. 2000)). The Court then noted that the only provision in the Business Agreement addressing termination is Section 2(g)(ii), and explained that Section 2(g)(ii), even if triggered, would only terminate the "licenses according to this agreement," not the Business Agreement as a whole. *Id.* at 9–10. As a result, the HVAC/R Market License would be terminated, but the other provisions of the Business Agreement would remain in effect. *Id.* at 10. Accordingly, the Court found that there was no express term of duration in the Business Agreement as a whole, and the Court further

indicated that it would not imply a term of duration, given the presence of other obligations of the parties in the Business Agreement. *Id.* at 10–11. Because there was no express or implied term of duration, the Business Agreement would be terminable at will under California law, and it appeared that TRE exercised its right to terminate by sending the November 27, 2012 letter to Fieldpiece. *Id.* at 11. Therefore, Fieldpiece could not demonstrate a substantial likelihood of success on the merits. *Id.*[2]

After the Court entered its Order denying Fieldpiece's Motion for Preliminary Injunction, TRE filed the instant Motion for Partial Summary Judgment, seeking summary judgment on its claim for declaratory judgment, *i.e.*, a Court Order declaring that the Business Agreement had been terminated. *See* Doc. 50. TRE seeks summary judgment based on the Court's preliminary finding that the Business Agreement was terminable at will under California law and had indeed been terminated by the November 27, 2012 letter. *See id.*

Thereafter, Fieldpiece filed its First Amended Answer, Affirmative Defenses, and Counterclaims. *See* Doc. 51. Fieldpiece asserted a counterclaim for breach of contract, alleging that TRE had breached the Business Agreement by unilaterally terminating it and thereafter refusing to supply the Integrated Circuits to Fieldpiece, and also by supplying the Patented Technology to third parties in violation of Fieldpiece's exclusive right to sell the Patented Technology in the HVAC/R market. *Id.* ¶¶ 18–22. Fieldpiece also asserted a counterclaim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.*, alleging that TRE had engaged in deceptive and unfair trade practices by supplying the Patented

---

[2] The Court also found that Fieldpiece had failed to demonstrate either that its damages were incalculable or that it would suffer irreparable harm if the injunction was not entered. Doc. 44 at 11 n.6.

Technology to Fieldpiece's competitors despite granting Fieldpiece the exclusive right thereto. *Id.* ¶¶ 23–29.

TRE then filed the instant Motion to Dismiss Counterclaims, arguing that because the Business Agreement was terminable at will and had been terminated by the November 27, 2012 letter, Fieldpiece's counterclaims failed to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). *See* Doc. 55. Fieldpiece thereafter filed responses to both the Motion for Partial Summary Judgment and the Motion to Dismiss Counterclaims. *See* Docs. 56, 57.

## II.   STANDARDS OF REVIEW

### A.   Review of a Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The existence of

8

some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.  A fact is "material" if it may affect the outcome of the suit under governing law. *Id.* at 248.  In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party.  *Id.* at 255.

> **B.**     **Review of a Motion to Dismiss**

To survive a motion to dismiss, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient.  *Id*. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Mere naked assertions, too, are not sufficient.  *Id*.  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face."  *Id*. (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The Court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint.  *Id*.  Therefore, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679.

**III.   DISCUSSION**

>  **A.**     **TRE's Motion for Partial Summary Judgment**

In requesting summary judgment on its claim for declaratory relief, TRE essentially asks the Court to reaffirm its preliminary conclusion that the Business Agreement was terminable at will and had been terminated, at the latest, by the November 27, 2012 letter.  *See* Doc. 50.  In response, Fieldpiece argues that the Court's Order on the Motion for Preliminary Injunction was

only a preliminary decision and therefore not binding on the Court. Doc. 56 at 3–4. Fieldpiece asserts that there is a genuine issue of material fact as to whether the Business Agreement contains a duration period and, therefore, TRE's Motion for Partial Summary Judgment must be denied. *Id.* at 4.

Fieldpiece is correct in asserting that the Court's Order on the Motion for Preliminary Injunction is not binding on this Court. Because the purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Accordingly, the findings of fact and conclusions of law made by a court on a motion for preliminary injunction are not binding on the court. *Id.* However, Fieldpiece has failed to present *any* legal authority to suggest that the Court should depart from its preliminary ruling that the Business Agreement does not contain a term of duration and is therefore terminable at will under California law. Moreover, the evidence considered by the Court at this stage is the same as the evidence previously considered by the Court in ruling on the Motion for Preliminary Injunction— namely, the Business Agreement itself.

Again, when interpreting the duration of a contract under California law,[3] "[t]he court first seeks an express term. If one is absent, the court determines whether one can be implied from the

---

[3] It is clear that California law governs the interpretation of the Business Agreement. A federal court sitting in diversity applies the conflict-of-laws rules of the forum state. *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Florida courts generally enforce choice-of-law provisions in a contract "unless the law of the chosen forum contravenes strong public policy." *Walls v. Quick & Reilly, Inc.*, 824 So. 2d 1016, 1018 (Fla. 5th Dist. Ct. App. 2002) (quoting *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So.2d 306, 311 (Fla. 2000)). Because the Business Agreement contains a California choice-of-law clause, *see* Bus. Agmt. § 2(o), and

nature and circumstances of the contract. If neither an express nor an implied term can be found, the court will generally construe the contract as terminable at will." *Zee*, 94 Cal. Rptr. 2d at 835 (citing *Consol. Theatres, Inc. v. Theatrical Stage Employees Union, Local 16*, 447 P.2d 325 (Cal. 1968)). Here, the only provision in the Business Agreement addressing termination is Section 2(g)(ii), which provides:

> The *licenses* according to this agreement shall terminate upon expiration of the *patent* for any reason, including failure to pay maintenance fees, or upon any final judgment of invalidity by a court of competent jurisdiction in the United States and further including exhaustion of all appeals after a final rejection in a reexamination process in the United States Patent & Trademark Office.

Bus. Agmt. § 2(g)(ii) (emphasis added). Even assuming that the termination provision in Section 2(g)(ii) of the Business Agreement had been triggered—which is doubtful, *see* Doc. 44—the provision would only terminate the "licenses according to this agreement," not the Business Agreement as a whole. Bus. Agmt. § 2(g)(ii). The only license addressed by the Business Agreement is the HVAC/R Market License. *See id.* § 2(g). As a result, the HVAC/R Market License would be terminated, but the other provisions of the Business Agreement would remain in effect. Therefore, there is no express term of duration that applies to the Business Agreement as a whole. Nor will the Court imply a term of duration, given the presence of other obligations of the parties in the Business Agreement. *See id.* §§ 2(d)–(f), 2(h)–(j). Because there is neither an express nor an implied term of duration, the Business Agreement is terminable at will. *See Zee*, 94 Cal. Rptr. 2d at 835. As such, TRE was within its authority to terminate the Business Agreement, which it did, at the latest, by its November 27, 2012 letter to Fieldpiece.

Fieldpiece asserts that the sworn testimony of TRE's president, William Williams, who stated that the Business Agreement lacks a duration provision, is insufficient to warrant summary

---

the parties do not assert that California's law contravenes strong public policy in Florida, the Court interprets the contract under California law.

judgment because it is self-serving and an opinion rather than a statement of fact. Doc. 56 at 4. However, the Court has not relied on Williams' opinion as to how the Business Agreement should be interpreted. Under California law, it is well settled that the interpretation of a contract is a question of law for the trial court's determination. *SDR Capital Mgmt., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 320 F. Supp. 2d 1043, 1046 (S.D. Cal. 2004) (internal citations omitted). Here, the terms of the Business Agreement at issue are clear and unambiguous. The Court finds that, as a matter of law, the Business Agreement lacks an express or implied term of duration. Accordingly, the Business Agreement is terminable at will and was terminated, at the latest, by TRE's November 27, 2012 letter to Fieldpiece. Because there is no genuine issue of material fact, TRE is entitled to summary judgment on its claim for declaratory relief, Count III of the Second Amended Complaint.

      **B.**      **TRE's Motion to Dismiss Counterclaims**

In its Motion to Dismiss Counterclaims, TRE relies on the Court's conclusion that the Business Agreement was terminable at will and had been terminated, at the latest, by the November 27, 2012 letter. *See* Doc. 55. TRE asserts that because the Business Agreement was terminated by this date, TRE cannot be held liable on Fieldpiece's counterclaims for breach of contract and deceptive and unfair trade practices for conduct occurring after this date. *Id*. However, as Fieldpiece points out, *see* Doc. 57, the counterclaims do not specify the time period for the conduct giving rising to the counterclaims. *See* Doc. 51 ¶¶ 18–29. Indeed, Fieldpiece maintains that TRE supplied its Patented Technology to third parties, in violation of the Business Agreement, *before* the termination of the Business Agreement by TRE's November 27, 2012 letter. *See* Doc. 57. As such, the Court's conclusion that the Business Agreement was terminated does not mean that

Fieldpiece's counterclaims must be dismissed. Rather, the Court examines the allegations in the counterclaims to determine whether they state plausible claims for relief under Rule 12(b)(6).

As discussed previously, California law governs Fieldpiece's breach of contract counterclaim. *See supra*, n.3. To state a claim for breach of contract under California law, a party must allege: (1) the existence of a contract; (2) performance by that party; (3) breach by the other party; and (4) damage resulting from the breach. *Alcalde v. NAC Real Estate Invs. & Assignments, Inc.*, 316 F. App'x 661, 662 (9th Cir. 2009) (citing *First Commercial Mortgage Co. v. Reece*, 108 Cal. Rptr. 2d 23, 33 (2001)). As to the first, second, and fourth elements, Fieldpiece properly alleges the existence of the Business Agreement, that Fieldpiece performed as required under the Business Agreement, and that Fieldpiece was damaged by TRE's alleged breaches. Doc. 51 ¶¶ 6, 9, 13. As to the third element, Fieldpiece alleges two breaches by TRE: (1) that TRE unilaterally and unjustifiably terminated the Business Agreement and thereafter refused to supply the Integrated Circuits to Fieldpiece; and (2) that TRE supplied its Patented Technology to third parties in violation of Fieldpiece's exclusive right to sell the Patented Technology in the HVAC/R market. *Id.* ¶¶ 20, 22. The Court finds that, as to the first alleged breach, Fieldpiece does not state a plausible claim for relief, because under California law TRE was entitled to terminate the Business Agreement at will. Therefore, TRE cannot be liable for refusing to supply the Integrated Circuits after the Business Agreement's termination. As to the second breach, however, Fieldpiece states a plausible claim for relief, because TRE could potentially be liable for supplying its Patented Technology to third parties if that activity occurred before the termination of the Business Agreement. Accordingly, Fieldpiece's breach of contract counterclaim will be dismissed only in part.

As to Fieldpiece's counterclaim under FDUTPA, Fieldpiece was required to allege three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1338 (11th Cir. 2012) (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d Dist. Ct. App. 2006)). In its counterclaim, Fieldpiece alleges that TRE committed a deceptive and unfair practice by supplying its Patented Technology to competitors of Fieldpiece despite granting Fieldpiece the exclusive right thereto, and that this conduct caused Fieldpiece to sustain actual damages. Doc. 51 ¶¶ 23–29. These allegations state a plausible claim for relief under FDUTPA, because TRE could potentially be liable for supplying its Patented Technology to Fieldpiece's competitors if that activity occurred before the termination of the Business Agreement. Accordingly, dismissal of Fieldpiece's FDUTPA counterclaim is not warranted.

## IV. CONCLUSION

For the aforementioned reasons, TRE's Motion for Partial Summary Judgment will be granted. As no genuine issues of material fact exist, TRE is entitled to a judgment in its favor on Count III of the Second Amended Complaint. TRE's Motion to Dismiss Counterclaims will be granted in part and denied in part as to Fieldpiece's counterclaim for breach of contract, and denied as to Fieldpiece's counterclaim under FDUTPA.

Accordingly, it is hereby **ORDERED:**

1. TRE's Motion for Partial Summary Judgment (Doc. 50) is **GRANTED**.
2. It is hereby declared that the Business Agreement between TRE and Fieldpiece was terminable at will, and was in fact terminated, effective, at the latest, November 28, 2012.

3. A Declaratory Judgment will be entered by separate Order of the Court, upon the conclusion of this litigation.

4. TRE's Motion to Dismiss Counterclaims (Doc. 55) is **GRANTED in part** and **DENIED in part**.

   a. The Motion to Dismiss Counterclaims is **granted** as to Fieldpiece's counterclaim for breach of contract to the extent it seeks to impose liability for actions occurring after the termination of the Business Agreement.

   b. The Motion to Dismiss Counterclaims is **denied** in all other respects.

**DONE** and **ORDERED** in Orlando, Florida on March 18, 2014.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties